**Maria Elizabeth LUBECKI**

v.

**David Thomas ASHCROFT et al.**

**No. 87–535–Appeal.**

Supreme Court of Rhode Island.

April 26, 1989.

William Landry, Blish & Cavanagh, Providence, for plaintiff.

Harry W. Asquith, Harry W. Asquith, Jr., Asquith, Merolla, Anderson, Ryan & Wiley, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on the plaintiff's appeal from a judgment of the Superior Court, dismissing her breach-of-contract suit and her shareholder's derivative suit. The trial justice held that the Superior Court lacked subject matter jurisdiction over the underlying contract suit between a husband and wife. We hold that the trial justice was in error, and we reverse.

The issue before us is whether civil actions that involve or are related to contracts between parties who were married when the contract was executed are within the exclusive jurisdiction of the Family Court, or whether the Superior Court and the Family Court share concurrent jurisdiction over these matters. Because the claims and counterclaims are numerous, we shall discuss only those facts necessary to our determination of this case.

Maria Elizabeth Lubecki and David Thomas Ashcroft were married in Canada in 1972 and lived there for about ten years. During the marriage Ashcroft worked for the Miner Company Ltd., a corporation owned and/or controlled by Lubecki's family in Quebec. After becoming the president and sole stockholder of the company, Ashcroft created several spin-off companies and issued stock in most of these companies to himself. He also dispersed funds to these various companies by means of intercorporate debt.

Lubecki and Ashcroft separated in 1982, and Lubecki instituted divorce proceedings in Canada. Several months later, in May 1982, Ashcroft and Lubecki negotiated a reconciliation agreement whereby Lubecki agreed to dismiss the divorce proceedings and resume living with Ashcroft. In exchange, Ashcroft agreed to transfer certain assets to Lubecki, including sole ownership of all the stock of one of his spin-off companies, Miner Industries, Inc. (Miner), a Rhode Island corporation. The validity of the reconciliation agreement and stock transfer remains in dispute.

About a year after the reconciliation, renewed marital difficulties arose, and Lubecki filed for divorce in Canada in May 1983. She gave written notice to Ashcroft and James A. Jerue, Esquire, attorney for Miner, that she was suspending their authority as officers and directors to act on behalf of Miner. Through her attorney, she also demanded that she be given the corporate records, financial statements,

and contracts of Miner. At the time of the filing of her complaint, Lubecki alleges that Ashcroft and Jerue continued to act as officers and directors of Miner. Lubecki never received the requested documents.

Lubecki asserts that during a hastily arranged "corporate" meeting, Ashcroft and Jerue conspired to prevent her from exercising her rights as sole stockholder by canceling the transfer of stock to her, issuing replacement shares to Ashcroft, and approving a new employment contract for Ashcroft with excessive salary and bonus provisions, and a $500,000 "retirement" benefit upon termination. She also claims that they proceeded to deprive Miner of its assets by transferring Miner's assets to companies owned and controlled by Ashcroft and Jerue.

In her capacity as sole shareholder of Miner, Lubecki filed a shareholder's derivative suit in July 1983 in Superior Court against multiple individual and corporate defendants including David Ashcroft, individually and in his capacity as former officer and director of Miner Industries, Inc., and as a partner in Buttonwood Associates; James A. Jerue, individually and as a former officer and director of Miner Industries, Inc., and as a partner in Buttonwood Associates; Miner Industries, Inc.; Westmount Manufacturing Consultants, Ltd.; and AJF, Ltd. (Ashcroft and Jerue are also owners and partners in Westmount and AJF). In addition to the breach-of-contract suit against Ashcroft, Lubecki's claims include allegations against Ashcroft and Jerue for breach of fiduciary duty, breach of confidence, fraud, misrepresentation, and conversion. She additionally charges Jerue, as Miner's attorney, with negligence and professional malpractice. Ashcroft and Jerue deny all claims and have filed counterclaims against Lubecki that include allegations of abuse of legal process and malicious prosecution.

The Bank of Montreal had filed suit against Lubecki, Ashcroft, Jerue, and Miner. By Court order the Bank of Montreal's suit was consolidated with Lubecki's suit against Ashcroft to protect its interests. The Bank of Montreal claims that Ashcroft was insolvent when he transferred Miner's stock to Lubecki and that the transfer was effectuated to defraud Ashcroft's creditors. The collective damages sought by all parties amount to millions of dollars.

Soon after Lubecki began proceedings in Superior Court in July 1983, Ashcroft filed a petition for divorce and a prayer for preliminary injunction in the Family Court. Although Ashcroft was temporarily successful in obtaining some injunctive relief, his petition was dismissed in September 1983. The Family Court declined to entertain Ashcroft's petition because a Canadian court had jurisdiction over a prior divorce action and because Ashcroft did not meet residency requirements.

In October 1983, Lubecki was granted injunctive relief by a justice of the Superior Court who temporarily restrained Ashcroft and Jerue from transferring funds from Miner to the Bank of Montreal or from Miner to Buttonwood Associates. Lubecki claimed that Miner's funds were being diverted to satisfy Ashcroft's personal debts. This order was later amended to permit and require Miner to pay $71,671 into an escrow account on behalf of the Bank of Montreal.

Beginning in February 1984, Lubecki's motion for a preliminary injunction was heard in the Superior Court over a period of six days. At the conclusion of those hearings the trial justice denied Lubecki's motion on the ground that she had failed to prove she would suffer irreparable harm. Ashcroft moved to dismiss the action, but the trial justice declined to rule on that motion and assigned the case to the trial calendar.

In considering the motion to dismiss, although he emphasized that he was not ruling thereon, the trial justice suggested that the Superior Court might not have jurisdiction to determine the validity of the reconciliation agreement that formed the foundation for Lubecki's right to the stock.[1] He

---

1. Under G.L.1956 (1969 Reenactment) § 7-1.1-43.1, Lubecki could not bring an action as a stockholder unless she was a holder of record at the time of the transaction precipitat-

pointed out in dictum that when the Legislature amended G.L.1956 (1969 Reenactment) § 8–10–3 in 1977, it gave "exclusive jurisdiction to the Family Court to hear and determine litigation that arose from contracts between persons who at the time of the execution of said contracts were husband and wife." *See* P.L.1977, ch. 89, § 1.

The case remained pending for another year and a half and had been assigned to the jury-trial calendar. By October 1985, the Canadian divorce was final, Ashcroft had remarried, and the Miner Company, Ltd., was bankrupt.

On November 18, 1987, a Superior Court justice entered an order granting Ashcroft's motion to dismiss, stating that the case should be removed to Family Court on the ground that the "entire dispute is premised on a reconciliation agreement" between Ashcroft and Lubecki.

The question before us is one of jurisdiction, and a brief summary of the applicable legislative history of the jurisdiction of the Superior Court and the Family Court will help to clarify and resolve the controversy.

"Prior to the enactment of the family court act, jurisdiction in divorce was exercised by the [s]uperior [c]ourt.[J]urisdiction * * * over the real and personal property of the parties was ancillary to the proceedings in divorce and was employed to effectuate orders for support and alimony * * *." *Rogers v. Rogers*, 98 R.I. 263, 268, 201 A.2d 140, 143 (1964); *see also Fox v. Fox*, 115 R.I. 593, 350 A.2d 602 (1976).

When the Family Court was established as a separate tribunal in 1961, it was given jurisdiction to hear, inter alia,

"all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and other matters including all petitions and motions relative to real and personal property in aid thereof affecting the parties and children wherein jurisdiction is acquired by

the court by the filing of such petitions for divorce * * *." G.L.1956 § 8–10–3, as amended by P.L.1961, ch. 73, § 1.

As the Legislature expanded the jurisdiction of the Family Court to hear matters that were previously within the exclusive jurisdiction of the Superior Court, the Family Court was given concurrent jurisdiction over these matters as ancillary to its divorce jurisdiction.

We held in *Rogers* that the Family Court had no general equitable powers. *See also Cabot v. Cabot*, 444 A.2d 845 (R.I.1982). However, through amendments to § 8–10–3 the Legislature has expanded the equity jurisdiction of the Family Court to include the authority to hear and determine petitions and motions relative to partitions, accountings, receiverships, sequestration of assets, resulting and constructive trusts, and other equitable matters arising out of the family relationship, P.L.1972, ch. 30, § 1; to locate fathers not living up to their obligation to pay support, P.L.1973, ch. 125, § 1 (amended by P.L.1975, ch. 3, § 1, to be gender neutral); to hear and determine disputes arising out of antenuptial agreements, property settlement agreements, and all other contracts between persons, who were, or planned to become, husband and wife when the contract was executed, P.L.1977, ch. 89, § 1; to hear matters relating to children who are mentally disabled or handicapped and require special education, training, or services, P.L.1977, ch. 89, § 1; and to have exclusive initial jurisdiction over all appeals from any administrative agency or board affecting or concerning children under age eighteen, P.L. 1977, ch. 89, § 1.

In *Fox* we held that the 1972 amendment to § 8–10–3 "enabled the Family Court to provide a form of one-stop service to a husband or wife who had commenced divorce proceedings through its bestowing on the court its newly found equitable powers." *Fox*, 115 R.I. at 598, 350 A.2d at 604.

ing the suit or her shares devolved upon her by operation of law from a person who was a

holder of record at such time.

It is clear that through subsequent amendments to the Family Court Act, "the Legislature never divested the Superior Court of the traditional equity powers which it has exercised ever since this court was established in 1905 * * *. Both [Family and Superior] courts now exercise a concurrent jurisdiction in the areas specified in the statute." *Fox*, 115 R.I. at 598, 350 A.2d at 604.

In 1965 the jurisdiction of the Superior Court was expanded by a grant of ancillary jurisdiction when the Legislature amended G.L.1956 § 8–2–14 to include the following language:

> "If an action is brought in the superior court which is within the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided such other actions are joined with the action within the jurisdiction conferred by this section or are subsequently made a part thereof under applicable procedural rules." P.L.1965, ch. 55, § 1.

This passage indicated a clear legislative intent to allow the Superior Court to give complete relief to parties properly before it in respect to the same transaction or occurrence, even in regard to actions wherein original jurisdiction may have been in another tribunal.

Here, Lubecki's suit not only is for breach of contract against her husband but also includes claims against several corporate defendants, and James Jerue, as an officer and director of Miner and as attorney for Miner, for professional negligence and malpractice. There was no petition for divorce or other relief pending in Family Court between Lubecki and Ashcroft, and the marriage was dissolved during the course of the Superior Court litigation.[2] To suggest that the parties were precluded from litigating their claims in Superior Court—claims arising out of the same transaction or occurrence—would violate the Legislative intent of encouraging the awarding of complete relief in Superior Court.

*Halliwell v. Lippitt Realty Co.*, 121 R.I. 927, 394 A.2d 708 (1978), bears some similarity to the case at bar. In *Halliwell*, while matters relating to a divorce were pending in Family Court, the wife filed a civil action in Superior Court against her husband and the defendant corporation. She alleged that she and her husband owned certain real estate as joint tenants; that her husband organized the defendant corporation and represented to her that she owned 50 percent of its stock; that in reliance upon that representation she conveyed her interest in the real estate to the corporation and guaranteed certain of its obligations; and that her husband subsequently claimed to be the owner of all the corporation's stock. She sought a declaratory judgment that she owned 50 percent of the stock and an injunction against the corporation from conveying or encumbering its real estate. In purported reliance on *Fox, supra*, a Superior Court justice dismissed the action in regard to both defendants for lack of jurisdiction. In *Fox* we held that G.L.1956 (1969 Reenactment) § 8–10–3, as amended by P.L.1972, ch. 30, § 1, enlarged the Family Court's jurisdiction in matters relating to real and personal property in divorce proceedings by authorizing it to act in areas where the Superior Court had previously exercised exclusive original jurisdiction. *Halliwell*, 121 R.I. at 927, 394 A.2d at 709. "We further held in *Fox* that where the two courts' jurisdictions overlap, principles of comity shall control and the court whose jurisdiction is first invoked should resolve the issues presented to it." *Id.*

In our order in *Halliwell*, we held that the Superior Court properly dismissed the plaintiff's suit against her husband because the Family Court had already acquired jurisdiction over the parties' divorce. "The defendant corporation, however, even though under the 1972 amendment it may be amenable to the Family Court's jurisdic-

---

2. The question of whether the Family Court would have had jurisdiction to resolve the issue of the validity of the reconciliation agreement absent a petition for divorce, separation, or other relief is not before us today.

tion, was not a party in the pending divorce action in that court and therefore was properly a party in the Superior Court proceeding." *Id.* at 928, 394 A.2d at 709. After a hearing before this court, we sustained the wife's appeal from the Superior Court decision dismissing her action against the corporate defendant and remanded the case to the Superior Court for further proceedings. *Id.* The order in this case is illustrative of the fact that the concurrent jurisdiction between the Family Court and the Superior Court may create a situation in which litigation may be fragmented between the two courts. We should hope to keep such fragmentation to a minimum in the future.

The basis for the Superior Court's dismissal of Lubecki's suit is the 1977 amendment to the Family Court Act that added the following pertinent clause conferring upon the Family Court the jurisdiction "to hear and determine * * * antenuptial agreements, property settlement agreements and all other contracts between persons, who at the time of execution of said contracts, were husband and wife or planned to enter into that relationship * * * ." G.L.1956 (1969 Reenactment) § 8–10–3, as amended by P.L.1977, ch. 89, § 1.

During that same session, the Legislature also added this language to the statute: "The Family Court shall have exclusive initial jurisdiction of all appeals from any administrative agency or board affecting or concerning children under the age of eighteen (18) years." *Id.*

■ It is important to distinguish the language in the two cited provisions of the amendment to § 8–10–3. Of particular significance is the presence of the word "exclusive" in reference to appeals from administrative agencies affecting juveniles, and the absence of the word "exclusive" in reference to contracts between married persons. There is nothing in the language of the Superior Court Act or the Family Court Act or any amendments thereto to indicate a legislative intent to divest the Superior Court of its jurisdiction over contract suits regardless of the marital relationship of the parties to the suit. We have

stated that such a divestiture, if intended, is accomplished by express language, not by implication. *See, e.g., Waldeck v. Piner,* 488 A.2d 1218 (R.I.1985). Unless the Legislature confers upon a new tribunal "exclusive original jurisdiction" over matters that had been within the authority of another tribunal, the authority so conferred is concurrent with that of the original tribunal. For example,

"[t]his court has held that the Superior Court and the Family Court may have concurrent jurisdiction over the partition of real estate in instances in which divorce or separation proceedings have been commenced. * * * We further held that after a final decree of divorce has been granted, 'the litigants were no longer husband and wife but merely two joint tenants who, like any other joint tenants who are not married to each other, are free to resolve their real estate differences in a partition suit instituted in the Superior Court.' " *Frazier v. Frazier,* 472 A.2d 1227, 1229 (R.I.1984); *see also Major v. Major,* 121 R.I. 581, 582, 401 A.2d 1275, 1276 (1979); *Keidel v. Keidel,* 119 R.I. 726, 731, 383 A.2d 264, 267 (1978).

Our analysis of the statutory expansion of Family Court jurisdiction indicates a clear legislative intent to furnish to parties who have filed a petition for divorce, separation, or other relief in the Family Court, a comprehensive resolution of property, contractual, and equitable disputes that have arisen between them. By the same token, the Legislature did not intend to diminish the general equitable powers that had been conferred upon the Superior Court from its inception. As we have suggested, both the Superior Court and the Family Court may have concurrent jurisdiction to resolve such disputes, and the principles of comity as well as the principles of practicality should generally be applied in determining which court is better able to furnish complete relief.

■ In the case at bar, no petition for divorce or other marital relief was pending in the Family Court when this complex action was filed. An attempted petition for

divorce was promptly dismissed. A number of parties were joined as defendants in this litigation who might or might not have been amenable to the jurisdiction of the Family Court. Consequently it seems clear beyond doubt that not only did the Superior Court have subject matter jurisdiction to determine all issues before it, including the validity of the reconciliation agreement, but under any reasonable principles of comity it also should have accepted the responsibility of determining that question along with all the other equitable issues arising out of the litigation. To suggest that the parties in this case should be remitted to the Family Court for determination of the validity of the agreement would subvert the carefully crafted legislative scheme that attempted to provide for comprehensive relief in a single tribunal. To resurrect the eighteenth-century Chinese wall between different tribunals (then, law and equity) would serve neither the principles of judicial economy nor the right of the parties litigant to a speedy and just remedy in resolution of their disputes.

We hold that the Superior Court, through its general equitable and legal powers, maintains the authority to adjudicate all contract actions, regardless of the marital status of the parties.

For the reason stated, the plaintiff's appeal is sustained. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.