Elizabeth J. ALMEIDA

v.

Paul M. ALMEIDA.

No. 95–86–Appeal.

Supreme Court of Rhode Island.

Feb. 16, 1996.

Brenda Rioles, Providence, for Plaintiff.

Paul K. Sprague, Warwick, Gregory S. Dias, William C. Maaia, Providence, for Defendant.

**OPINION**

**PER CURIAM.**

This case came before a panel of the Supreme Court for oral argument on January 16, 1996, pursuant to an order directing the defendant, Paul M. Almeida (Paul), to appear and show cause why the issues raised in his appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown, and the appeal will be decided at this time.

On May 3, 1989, Elizabeth J. Almeida (Elizabeth) was granted a final judgment of divorce from Paul. That judgment provided that Elizabeth and Paul would have joint custody of their minor children, but physical possession of the children would be with Elizabeth, and Paul would have reasonable right of visitation. In November 1989, a Family Court order was entered that withdrew Paul's visitation right, and further, enjoined him from having any contact with the minor children until further order of that court. That order was prompted by allegations that Paul had sexually abused the children. After investigation by the Department of Children, Youth and Families (DCYF) the allegations were submitted to the grand jury, which later returned a no true bill. On June 16, 1991, by further order of the Family Court, Paul was permitted to resume visitation with the children, conditioned upon the presence of a DCYF representative and

counseling for Paul and the children. That June 16, 1991 order also enjoined the parties and their attorneys from disclosing to third persons the contents of any of the counseling reports and psychological evaluations, all of which were ordered to be sealed so as to protect the interests of the minor children. To this point in time, the Family Court proceedings were both amiable and routine, but that judicial normalcy was soon to be interrupted and transformed into a legal-judicial quagmire fathered by unpardonable error and mistaken identity.

Paul was employed as a guidance counselor in the Killingly, Connecticut, school system. Someone, somewhere in the Killingly school system learned of the Family Court custody and visitation matters in the Rhode Island Family Court in the previously adjudicated divorce case between Elizabeth and Paul, and on September 25, 1992, there suddenly appeared a motion to intervene filed on behalf of the "Killingly Public Schools."[1] In addition to that motion to intervene, the prospective intervenor filed a motion to modify the April 22, 1992 order of the Family Court that provided for the confidentiality of the written psychiatric, psychological, and counseling reports of Paul and of the two minor children. Paul, by counsel, filed an objection to both the motion to intervene as well as the motion to modify the confidential report information provision in the April 22 order.

The simple, clear, and unequivocal wording of Rule 24 of the Rhode Island Rules of Domestic Relations Procedure did not permit intervention in this case. Notwithstanding, a Family Court justice granted the "Killingly Public Schools'" motion to intervene. Rule 24, when examined, discloses that the designated entity "Killingly Public Schools" had no right to intervene, could not meet any of the rule requirements for permissive intervention and failed in any manner to satisfy the procedural requirements called for in subsection (c) of that rule. In short, and without attempting to temper or shade meaning, the Family Court justice mistakenly perceived something labeled the "Killingly Public Schools" to be an eligible intervenor when

in legal reality it was simply an intermeddler. As a result of that mistaken identity, procedural chaos set in. The Family Court fortunately, however, next denied the intervenor's request to modify its April 22, 1992 confidentiality order concerning the children's counseling and evaluation reports. Undaunted by that denial, the intervenor described simply as the "Killingly Public Schools" next sought to depose the psychologist who was counseling the two minor children so as to discover facts about their father, its employee, Paul. The Family Court properly granted Paul's motion to quash that deposition.

The "Killingly Public Schools'" intervention purpose and actions in the Rhode Island Family Court proceedings were totally unrelated to the child visitation right issue then pending in the Family Court. The intervenor was only concerned with hopefully obtaining evidence against its employee, Paul, that would be helpful in what appears to be future employee dismissal procedures contemplated against Paul, in the State of Connecticut. As a practical matter, that motivation and purpose would actually be adverse and detrimental to the interest of the minor children because if the intervenor is successful in dismissing Paul, he would then be unable to continue to comply with the Rhode Island Family Court support order for the benefit of his minor children.

The "Killingly Public Schools," having failed in its attempt to depose the minor children's psychologist, next embarked on a more subtle method of discovery. Paul was requested to sign a release/authorization form by which the intervenor employer could hopefully circumvent the April 22, 1992 Family Court order and obtain directly from the counselors and psychologist the confidential information denied it by the terms of the April 22 order. Paul, however, refused to sign the release/authorization form. Had he done so, he would have been in violation of the April 22 order and subject to contempt proceedings for having done so. The "Killingly Public Schools" then allegedly threatened him with dismissal from his employment in the Killingly school system if he

1. The existence of a recognizable legal entity such as "Killingly Public Schools" for purposes of satisfying real party in interest standing appears to us highly questionable.

persisted in refusing to sign the information release form.

Paul's counsel reacted to the intervenor's jump-or-be-pushed discovery technique by filing a petition in the Family Court, seeking injunctive relief against the Connecticut schools' intended action. Notwithstanding the absence of such equitable jurisdiction in the Family Court that would, on the particular facts before us, permit injunctive relief against Paul's Connecticut employer, *Lubecki v. Ashcroft*, 557 A.2d 1208, 1211 (R.I.1989), the Family Court general master, after hearing, granted equitable preliminary injunctive relief against the "Killingly Public Schools" which enjoined it from compelling Paul, as a condition to continued employment in Connecticut, to sign the release/authorization form. The "Killingly Public Schools" immediately filed a motion to reargue, and after hearing thereon, the Family Court general master reversed his previous position and vacated his earlier grant of equitable preliminary injunctive relief. In so doing, he gave as reason therefor:

> "So that the Court, one more time so we understand, I'm not directing your client to sign anything, but the restraining order that's in effect against the Connecticut School Department I'm hereby lifting. They are now left on their own to provide in some appropriate forum, wherever, it is, to secure the documents they seek.
>
> "I see no reason not to allow the State of Connecticut to proceed as appropriate and the temporary injunction which was entered previously by this Court is hereby vacated."

The general master then immediately stayed his order vacating the preliminary injunction, which for all practical purposes served to actually *reinstate* the injunctive relief that he believed unwarranted and which he did not want to continue, pending Paul's suggested appeal to this Supreme Court. That was done thirteen months ago, on December 16, 1994, and since then the "Killingly Public Schools" has been enjoined in Connecticut from determining whether Paul is a fit person to be employed by it as a guidance counselor.

 Paul's appeal is not properly here in this court because under our long established general rule, no appeal lies from the denial of a request for preliminary injunction. *Paramount Office Supply Co. v. D.A. Mac Isaac, Inc.*, 524 A.2d 1099 (R.I.1987); *Oakley v. Wood*, 423 A.2d 1176 (R.I.1981); *Redfern v. Church of the Mediator*, 101 R.I. 182, 221 A.2d 453 (1966). In those instances wherein the denial of injunctive relief in effect has the element of finality, we have, however, relaxed that general rule and permitted review here by way of the discretionary writ of certiorari. *In re Joseph J.*, 465 A.2d 150, 151 (R.I.1983). There is no unusual aspect to this case that would incline us to exclude it from the general rule.

 As to whether the subject matter of this ill-fated appeal was properly before the Family Court in the first instance, one need only refer to Rule 24 concerning intervention, and to G.L.1956 (1985 Reenactment) § 8-10-3 and § 8-10-3.1. Neither serves to extend the Family Court's jurisdiction into the State of Connecticut so as to permit monitoring conditions of employment in the Killingly school system or to permit that system to utilize a Family Court proceeding in this state, in which it has no recognizable interest, as a vehicle through which to obtain evidence for use in its own particular Connecticut proceeding against Paul.

Paul's appeal is denied and dismissed. The order appealed from is affirmed, the stay thereof is vacated, and the case is remanded to the Family Court for whatever further proceedings may be properly brought before that court.