DECISION
By this fraud action, plaintiffs request, among other things, that this Court declare null and void portions of a Family Court final judgment. Even assuming that the Superior Court has the power to so declare, considerations of comity and practicality, as well as the finality of the Family Court's judgment, compel the Court to grant the defendants' motion to dismiss.
Fortunately, in making this determination, the Court need not foray too far into this case's somewhat convoluted procedural past. Suffice it to say that in the divorce action between the defendant Jane G. Shaw and Jeffrey Rose, who is the son of the plaintiffs Viriato and Emily Rose, Jane claimed the marital domicile as marital property. However, it is alleged in the complaint that the plaintiff Sail Realty Trust, of which Emily is fifty-percent beneficiary and Viriato fifty-percent beneficiary and trustee, was the title holder to the marital domicile and merely allowed Jane and Jeffrey to reside there in exchange for their maintaining it. In any event, the Family Court ultimately ordered that the marital domicile be placed in a separate trust naming Jane and one of Jeffrey's other relatives as fifty-percent beneficiaries.
Thereafter, Jane and Emily agreed that in exchange for Jane's foregoing past-due and future child support obligations from Jeffrey, Emily would transfer her fifty-percent beneficial interest in the marital domicile to Jane. Viriato, allegedly out of fear of being held in contempt of the Family Court order, then transferred his fifty-percent beneficial interest in the property to Jane and her new husband, defendant John Shaw. Finally, the now-fully-realized Jane sold her and Jeffrey's old marital domicile and bought another one for her and her new husband.
In response, plaintiffs sued alleging that as "a result of the deceit and fraud of the Defendants, Plaintiffs have been damaged by the lose [sic] of their Property" (Count 1) and are entitled to punitive damages (Count 2), that "Defendants breach [sic] their contract and agreement with Plaintiffs and as a result thereof, Defendant has been unjustly enriched" (Count 3), and that the "Defendants' actions as aforesaid constituted fraud, misrepresentation and deceit upon the Family Court in Rhode Island" (Count 4). For each of Counts 1 and 3, plaintiffs request compensatory damages in an amount sufficient to satisfy the Superior Court's jurisdictional requisite, and for Count 4, plaintiffs request compensatory damages, a declaration that the Family Court order granting Jane a fifty-percent beneficial interest in the marital domicile is null and void, and that a constructive trust be placed upon Jane and John's new marital domicile. As is apparent, all of plaintiffs' claims emanate from Jane's representation to the Family Court that the marital domicile was marital property-that is the core wrong that this action seeks to remedy. To plaintiffs' pleading, defendants have moved pre-answer to dismiss for lack of subject-matter jurisdiction, for failure to state a claim upon which relief can be granted, or for summary judgment.
Pursuant to G.L. 1956 § 8-2-13, "[t]he superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character." Furthermore, pursuant to G.L. 1956 § 8-2-14, the superior court has "exclusive original jurisdiction of all other actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars." Finally, the Family Court has jurisdiction to "hear and determine all petitions for divorce . . . and other matters arising out of petitions and motions relative to real and personal property in aid thereof . . . and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce," G.L. 1956 § 8-10-3. Putting aside the question of whether the Superior Court can effectively revoke a Family Court final judgment, but see Frazier v. Frazier, 472 A.2d 1227, 1230 (R.I. 1984) ("[w]e are of the opinion that the rule of comity would render unseemly a judgment by one court of coordinate jurisdiction to annul or render nugatory a decree of another court in the course of granting relief to one of the parties litigant"), it is clear that the Superior Court otherwise has the power to adjudicate properly stated claims of the type alleged by plaintiffs.
However, it is just as clear from the papers that Viriato, though not a party to his son's Family Court divorce proceeding, was at some point aware of that proceeding and of its potential ramifications for the Sail Realty Trust. Indeed, he was subpoenaed into the Family Court as "trustee under the Sail Trust Agreement" and ordered to bring the "Trust Agreement and Amendments thereto." And even if he was unaware until after the Family Court entered its final order, R. Dom. Rel. P. 24 would appear to have provided ample opportunity for intervention and R. Dom. Rel. P. 60 ample opportunity to vacate, if warranted. And if the Rules of Domestic Relations Procedure provided these plaintiffs with an avenue to obtain relief as an initial matter, then that may affect the extent of the plaintiffs' right to seek relief in the Superior Court. Accordingly, and notwithstanding that the Superior Court has undeniable power to adjudicate claims of the type made by plaintiffs, this Court defers to our Supreme Court's admonition in Lubecki v. Ashcroft, 557 A.2d 1208, 1213 (R.I. 1989) that when "both the Superior Court and the Family Court may have concurrent jurisdiction to resolve such disputes, . . . the principles of comity as well as the principles of practicality should generally be applied in determining which court is better able to furnish complete relief." See also Rubano v. DiCenzo, 759 A.2d 959, 972 (R.I. 2000) ("because in this case proceedings were initiated in the Family Court and the parties' settlement in the form of an order has already entered in that court, the Superior Court, as a matter of comity, should abstain from asserting its jurisdiction if either party should attempt to invoke it"). Here, the Court is persuaded that principles of comity and practicality indicate that the Family Court, from whence this dispute ultimately originated and where related litigation is apparently still ongoing, is better situated, as an initial matter, to provide the ultimate relief sought here.
Moreover, and more pointedly, our Supreme Court has affirmed the dismissal of a case wherein a divorced father sued his ex-wife in the Superior Court to recover all child support monies he was ordered by the Family Court to pay when his ex-wife knew at the time of the divorce proceeding that the child was not his. On appeal, the Supreme Court said that rather than
 "`go upstairs,' . . . he should have opted to return to the Family Court. Until such time as the final judgment in the Family Court is properly amended or vacated, its declaration that Daniel is the father . . . is final and binding on all, including the Superior Court. Daniel cannot collaterally attack and undo in the Superior Court the Family Court's adjudication of him as being the father." Paquette v. Trottier, 723 A.2d 794, 794 (R.I. 1998).
Though the basis for the Supreme Court's denial of Daniel's appeal is not made clear-the ex-wife moved before the trial justice to dismiss for a lack of subject-matter jurisdiction and for failure to state a claim but the trial justice dismissed because the "finding of paternity was `res Judicata all over the line,'" Paquette, 723 A.2d at 794, a distinctly summary-judgment-based rationale-it is clear that in the end analysis our Supreme Court was convinced that his claim needed to be brought first in the Family Court.
This Court is likewise convinced that because this action is essentially an attempt to "collaterally attack and undo in the Superior Court the Family Court's adjudication" awarding Jane a fifty-percent beneficial interest in the marital domicile, plaintiffs' claims ought to be heard first by the Family Court. See generally G.L. 1956 §15-5-16.1(c) ("[t]he assignment of property, if any, . . . and once made in a final decree shall be final, subject only to any right of appeal which the parties may have").
Finally, and contrary to plaintiffs' assertions, to the extent this case is truly one of "fraud upon the court" as contemplated by R. Dom. Rel. P. 60(b), but see Wright, Miller Kane, Federal Practice and Procedure: Civil 2d § 2870, at 418 ("[t]he cases in which it has been found that there was . . . a `fraud upon the court,' for the most part, have been cases in which there was `the most egregious conduct involving a corruption of the judicial process itself'"), "[t]he power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts," id. at 409. Thus the Family Court, as a court, inherently has the power to remedy frauds perpetrated upon it. And, on the other hand, if this case is "merely" one of fraud in the perjury sense that Jane allegedly falsely claimed as marital the Sail Realty Trust's property, then R. Dom. Rel. P. 24 and 60(b) would appear to have provided an appropriate and adequate avenue for relief. In either event, it is the Family Court that ought be given first opportunity to consider this matter.
Counsel shall prepare an appropriate judgment for entry.