1154

Mable S. BROWN, Respondent v. Donald A. BROWN, Executor of the Estate of Robert H. Brown, Appellant.

(368 S. E. (2d) 475)

Court of Appeals

*William H. Grimball, Grimball, & Cabaniss,* Charleston, *for appellant.*

*Nancy D. Hawk,* Charleston, *for respondent.*

Heard Feb. 16, 1988.

Decided May 9, 1988.

BELL, Judge:

Mabel S. Brown petitioned the family court for a determination of her interest in the property of her marriage to Robert H. Brown. Before Mabel could serve her husband with a copy of the summons and complaint, he died. Donald A. Brown, the executor of Robert's estate, appeals from an order of the family court holding that it has personal and subject matter jurisdiction to determine Mabel's interest in the marital property. We reverse.

Mabel and Robert were married in 1962. Immediately following the marriage, they moved into a house where they resided until the time of Robert's death. The house was acquired by Robert prior to the marriage.

On January 30, 1987, Mabel filed a summons and petition in the family court asking it to grant her an equitable interest in the marital property, costs, and attorney fees.

In the petition, Mabel alleges that Robert has "threaten[ed] to evict her from the home, [and has] repeatedly inform[ed] her that he has disowned her in his will and will not allow her to remain in the home that has been her residence for twenty six years." She further alleges that she "is fearful that she will be forced to leave the marital home ..." and that despite pleading with him, Robert refuses to grant her continued use of the marital home.[1] Despite allegations that Robert has abused and mistreated her in recent years, there is no request in the petition for a divorce, or separate support and maintenance. To the contrary, Mabel expresses her desire to remain in the marital home and care for Robert.

On February 1, 1987, before Mabel had served Robert with the summons and complaint, he died.

On February 2, 1987, Mabel filed a *lis pendens* against the marital home.

On February 3, 1987, Robert's will was admitted to pro-

---

[1] Although the petition fails to list the assets to be divided, a reading of the parties' briefs and the record reveals that Mabel was primarily interested in acquiring an interest in the marital residence, since she feared that Robert would eject her.

bate,[2] and Donald qualified as executor. On the same day, Mabel served Donald with the summons and complaint. She then filed a motion to have Donald substituted as the real party in interest.

Donald in turn moved to dismiss the action, to set aside and quash the service of the summons and petition, and to cancel the *lis pendens* on the grounds that the family court did not have personal jurisdiction over either Robert or himself and that the family court did not have subject matter jurisdiction over the cause of action.

The family court heard both motions on February 19, 1987. On April 1, 1987, it issued an order granting Mabel's motion, and denying Donald's motion.

During a marriage a spouse may acquire a vested special equity and ownership right in the marital property. Section 20-7-471, Code of Laws of South Carolina, 1976, as amended. The "equity and ownership right[s] are subject to apportionment between the spouses by the family courts ... at the time the marital litigation is filed or commenced as provided in § 20-7-472." *Id.* Section 20-7-472 only authorizes a family court to apportion the marital property.

> [i]n a proceeding for divorce a vinculo matrimonii or separate support and maintenance, or in a proceeding for disposition of property following a prior decree of dissolution of a marriage by a court which lacked personal jurisdiction over an absent spouse or which lacked jurisdiction to dispose of the property, and in other marital litigation between the parties. ...

Therefore, a family court lacks subject matter jurisdiction to apportion marital property between the parties unless the apportionments is incident to: (1) a divorce *a vinculo matrimonii*, (2) an action for separate support and maintenance, (3) a proceeding to dispose of marital property after a prior decree of dissolution of a marriage by a court which lacked personal jurisdiction over the other spouse or which lacked jurisdiction to dispose of the property, or (4) other marital

---

[2] Robert's will makes no provision for Mabel to remain in the marital home.

litigation between the parties. *Cf. Sims v. Sims,* 290 S. C. 190, 348 S. E. (2d) 835 (1986) (Section 20-7-420(2), Code of Laws of South Carolina, 1976, authorizes the family courts to settle parties' property rights incident to "marital litigation" between them).[3]

Mabel argues that the family court has subject matter jurisdiction to effect a property division, because this case is "other marital litigation between the parties." More specifically, she asserts that "the conflict generated by ... [Robert's] repeated threats to evict ... her from her home and his accompanying acts of physical violence" motivated her to bring this action. She contends that this conflict is marital in origin. Thus, she argues, her claim for equitable division is marital litigation, since marital conflict was the reason she brought this action. We reject this argument.

Marital litigation is litigation which seeks to alter or terminate the marital status of the parties. *See Sims v. Sims, supra; Eichor v. Eichor,* 290 S. C. 484, 351 S.E. (2d) 353 (Ct. App. 1986). This is distinct from litigation between spouses or former spouses to determine their respective interests in property. *Id.* A family court lacks subject matter jurisdiction to settle a dispute between spouses involving their respective interests in property, unless the determination is incident to an action requesting an alteration of their marital status. *Id.*

The family court does not have subject matter jurisdiction to decide this case, as it does not involve marital litigation. Mabel only seeks to have the court adjudicate her rights in property. She in no way seeks to have the court alter or terminate her marital status. In fact, she expressly states her desire to remain in the marital home with Robert. That her motivation for bringing the suit arose out of marital tensions does not transform her cause of action from nonmarital litigation to marital litigation. When distinguishing marital litigation from nonmarital liti-

---

[3] Examples of "other marital litigation" are actions to annul a marriage or to determine the validity of a marriage. *See White v. White,* 283 S. C. 348, 323 S. E. (2d) 521 (1984) (family court has power to apportion property in an annulment proceeding); Section 20-7-420(5), Code of Laws of South Carolina, 1976 (family courts have exclusive jurisdiction to hear actions to determine the validity of marriages).

gation it is the nature of the cause of action, not the reason for bringing it which controls.[4] Therefore, the family court erred in refusing to dismiss the action for lack of subject matter jurisdiction.

In view of our disposition of this case, we express no opinion as to whether the family court had *in personam* jurisdiction over Robert's estate or Donald as its executor.

For the reasons stated, the order of the family court is

Reversed.

SANDERS, C. J., and GARDNER, J., concur.

---

[4] Were we to hold otherwise, a family court would potentially be vested with subject matter jurisdiction to adjudicate virtually any suit brought by one spouse against the other (e.g., an ordinary breach of contract action), if the allegedly aggrieved spouse claimed that his or her reason for bringing the suit arose out of their marital relations. Such a result was clearly not intended by Section 20-7-420(2).