## Millicent Allen v. Neil T. Allen

[641 A.2d 1332]

No. 92-220

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 15, 1994

*Geoffrey Judd Vitt* of *Brooks, McNally, Whittington, Platto & Vitt*, Norwich, for Plaintiff-Appellant.

*Ernest P. Sachs*, Norwich, for Defendant-Appellee.

**Allen, C.J.** The issue on appeal is whether the family court erred in ruling that the postnuptial agreement bars the plaintiff from collecting interest on the note. That is the only issue

briefed and argued by the parties, and the resolution in this Court should be confined to an answer to that question. Because I agree with my associates that the trial court's conclusion was erroneous in that respect, I would reverse and remand the matter for such further proceedings as the parties and court deem appropriate.

*Reversed and remanded.*

**Dooley, J.,** concurring and dissenting. Plaintiff wife appeals from a decision of the Windsor Family Court granting plaintiff a divorce and construing a postnuptial agreement to deny her claim of interest on a loan she had made to defendant husband. As this appeal stands, all five justices join in Part I of this opinion and agree that the family court's ruling construing the postnuptial agreement must be reversed. We disagree, however, on how the case should proceed. Four members of the Court are evenly divided on the question of which court has jurisdiction over further proceedings occasioned by our reversal, while the Chief Justice expresses no opinion on that question. I would affirm the judgment of divorce, but not the ruling on plaintiff's claim of interest on the loan. I am authorized to state that I am joined by Justice Gibson in Parts II and III of this opinion.

The parties were married in 1973 and separated in 1989. Both parties are over 70, and defendant currently resides in a nursing home. During their marriage, the parties kept their individual finances separate and all assets, including their real and personal property, quite separate except for the income that was used to meet their household expenses, reflecting an apparent desire to have their assets pass to their children from former marriages. Plaintiff never transferred her home into her and her husband's names jointly, and throughout the marriage, defendant referred to it as her house. Similarly, defendant never transferred any of his properties into plaintiff's name. The parties filed joint income tax returns, but each contributed from separate funds to pay the tax allocable to their respective incomes.

During the marriage, the parties made various loans to one another. In the early 1970s, the wife borrowed $16,000 from the husband to build a garage. She repaid the loan in full in 1976. In

December 1982, husband borrowed $22,350.75 from wife, giving her a promissory note bearing annual interest at twelve percent. The note also provided for payment of the note in case of death or disability of the husband. Husband borrowed an additional $500 in 1983, payable on demand, also with twelve percent annual interest.

In March 1987, the parties entered into a postnuptial agreement prepared by the wife's attorney at her insistence. The agreement provided for husband to release his right of curtesy and for wife to release her right of dower. The initial issue in the present case concerns Section 3 of the agreement, entitled "Intent of Parties," which states:

> It is the intention of the parties to mutually release and waive all benefits of the laws of the State of Vermont relating to husband and wife, dower, curtesy, homestead, and the like, and forever bar each other from any action to recover any interest that may now or shall hereafter during the lifetime or at the death of either of the parties hereto be acquired by the other in the property, both real and personal, of the other.

In 1983, husband acknowledged that as of May 12, 1983, he owed his wife $24,000 in principal. During the summer of 1987, several months after execution of the postnuptial agreement, husband repaid this principal amount, but failed to repay any of the interest due. At that time, plaintiff estimated the interest due at $11,000. Plaintiff subsequently filed for divorce, and at the final hearing testified that accrued and unpaid simple interest on the note at the rate of twelve percent then totalled $20,333.

I.

The family court determined that the sole issue in the divorce proceeding was the equitable distribution of the parties' marital property. However, rather than applying the statutory factors governing division under 15 V.S.A. § 751(b), the court applied the parties' postnuptial agreement after first determining that the agreement met the standards set forth in *Bassler v. Bassler*, 156 Vt. 353, 361, 593 A.2d 82, 87 (1991), governing en-

forceability.[1] The court ruled that the wife's claim on the debt contract was barred by the postnuptial agreement and thus declined to award the interest due under the promissory notes, explaining:

> Since a divorce proceeding occurs by virtue of a marriage, the Court concludes that the Agreement serves as a bar against Plaintiff's right to collect through a divorce proceeding whatever *interest she may have in Defendant's assets or property* as a result of an obligation which existed prior to the Agreement itself. (Emphasis added.)

Since the interest on the loan to husband was, in the court's view, an "interest she may have in Defendant's assets," the court concluded that she had waived her right to collect by executing the postnuptial agreement.

We disagree. First, it is clear that the manifest purpose of Section 3 of the postnuptial agreement was to clarify the parties' intention to waive dower and curtesy; this context demonstrates that the provision was not intended to forgive specific obligations arising out of contracts between the parties. See *Howard Bank v. Lotus-Duvet Co.*, 158 Vt. 393, 396, 610 A.2d 562, 564 (1992) (contract should be construed to further parties' intentions).

Second, even apart from the context of the language, the court's reading of Section 3 is incorrect. At best, Section 3 deals with the ability of one spouse to reach the property of the other, not with whether one spouse owes the other money under a contract. However the provision is interpreted, the court went too far in extinguishing the underlying debt. In effect, it transferred plaintiff's property, the debt owed her by defendant, to defendant by extinguishing it, exactly the kind of interspousal transfer the provision prohibits.

Even if the court's action had been to recognize the existence of the debt, but to refuse to enforce it to the extent it would be

---

[1] The trial court utilized the *Bassler* factors, which specifically address the enforceability of antenuptial agreements, to the parties' postnuptial agreement. Because all members of the Court agree that the attempt of the court to construe the agreement was in error, we do not have to reach whether this use of the *Bassler* factors was appropriate.

collected from defendant's separate property, this Court could not affirm it. To affirm, we would have to find that each spouse intended that a judgment he or she might have or obtain against the other spouse would be uncollectible, whether based on tort, contract or some other theory. The statement of intent found in Section 3 shows instead that the parties wanted to forego any rights they had against each other because of their marital status. We cannot conclude it was intended to cover rights to which marital status is irrelevant. Had they wanted to enter an agreement that dealt with forgiveness of indebtedness, it is clear from their extensive arm's length dealings that they knew how to do so. They did not do so here.

## II.

Because the parties' postnuptial agreement does not bar the wife's debt collection claim, a holding upon which the Court is unanimous, I now turn to whether the claim was properly before the family court for resolution.[2] The Legislature has designated fifteen specific types of proceedings which may be brought in that court. 4 V.S.A. § 454. It has not given the family court, like the superior court, general jurisdiction over other civil matters. Compare 4 V.S.A. § 113 (superior courts "shall have original and exclusive jurisdiction of all original civil actions" except those granted to the jurisdiction of district courts, environmental law division, family court and supreme court) with 4 V.S.A. § 454 ("family court shall have exclusive jurisdiction to hear and dispose of the following [specified] proceedings"). Thus, the family court is a court of limited jurisdiction, and other types of proceedings may not be brought in that court. Cf. *In re M.C.P.*, 153 Vt. 275, 302, 571 A.2d 627, 642 (1989) ("When the district court is acting as a juvenile court, it is exercising special and very limited statutory powers. Gener-

---

[2] This case was originally heard by a three-justice Court pursuant to V.R.A.P. 33.1, and an entry order was issued affirming the decision below. That order relied, in part, on the question of whether the family court had jurisdiction to adjudicate this claim and whether it should exercise such jurisdiction. Plaintiff sought reargument to clarify the rationale, and the three-justice Court was unable to agree. Reargument was granted before the full Court, and the parties had the opportunity to address the jurisdictional question. It is properly before us. See *In re Williams*, 154 Vt. 318, 319 n.*, 577 A.2d 686, 687 n.* (1990).

ally, unless there is statutory authority for a particular procedure, the court does not have the power to employ it.") (citation omitted); *Heacock v. Heacock*, 520 N.E.2d 151, 153 (Mass. 1988) (refusing to allow joinder of tort claim with divorce action on ground that "plaintiff could not have recovered damages for the tort in the divorce action, as the Probate Court does not have jurisdiction to hear tort actions and award damages"); *Kleila v. Kleila*, 406 N.E.2d 753, 756, 757, 428 N.Y.S.2d 896, 899, 900 (1980) ("Family Court is a court of limited jurisdiction" having power to modify divorce decrees, but lacking power to modify separation agreements as latter are "separate and independent contractual arrangement between the parties"); *Concannon v. Concannon*, 356 A.2d 487, 492 (R.I. 1976) ("The Family Court is a statutory tribunal whose jurisdiction is limited to that expressly stated in the statute or transferred to it from other tribunals."). Further, "[w]hen a statute limits the jurisdiction of a court, it must be strictly interpreted." *Sanders v. Sanders*, 570 A.2d 1189, 1192 (Del. 1990).

In those states that have adopted family court systems,[3] the courts have held that general civil claims, even between spouses, cannot be litigated in the family court. For example, the South Carolina Supreme Court has consistently held that matters sounding in contract are not to be contested in family courts. See *Sims v. Sims*, 348 S.E.2d 835, 835–36 (S.C. 1986) ("family court lacks jurisdiction because this is an action at law on a contract or trust theory" and "is not incorporated in the divorce decree[;] therefore, [husband] may only seek enforcement in the Court of Common Pleas"). Other courts have reached similar conclusions. See, e.g., *Sanders*, 570 A.2d at 1191 (rejecting wife's petition to rescind parties' separation agreement not merged with final uncontested divorce decree

---

[3] In addition to Vermont, seven states and the District of Columbia currently have wholly separate family court systems. They are, including the date of origination of the separate systems: Delaware (1971); District of Columbia (1970); Hawaii (1965); Louisiana (1979); New Jersey (1984); Ohio (1914); Rhode Island (1961); and South Carolina (1968). Page, *Family Courts: An Effective Judicial Approach to the Resolution of Family Disputes*, 44:1 Juv. & Fam. Ct. J. 3, 4–5 (1993). New York established a family court system in 1963, but excluded divorce proceedings from the court's jurisdiction. *Id.* at 8 n.45.

because "the Family Court has no statutory jurisdiction to entertain petitions to rescind contractual agreements outside the scope of divorce or annulment proceedings").

I understand Justice Morse's position to be that these cases all involve independent proceedings in family court, and, once the family court obtained jurisdiction over the divorce, it had ancillary jurisdiction to resolve contract claims. First, not all the cases from other states involve independent proceedings in which the family court did not have proper claims before it. See, e.g., *McGrew v. McGrew*, 257 S.E.2d 743, 744 (S.C. 1979) (although family court had jurisdiction to determine custody of children of separated parents, it does not have jurisdiction to determine support owed under separation agreement because agreement involves contractual rights).[4] In any event, I can find no support, either in our precedents or those from other states, for the proposition that a state court of limited subject matter jurisdiction may resolve claims outside its jurisdiction because they are appended to claims that are within its jurisdiction. In *In re M.C.P.*, a termination of parental rights case decided before the creation of the family court, we considered the propriety of the juvenile court asserting ancillary jurisdiction over a sibling's dispute with the Department of Social and Rehabilitation Services concerning its methods of investigating the termination case. 153 Vt. at 301–03, 571 A.2d at 641–42. We reversed the assumption of jurisdiction and held: "The court has no jurisdiction to consider side issues that do not concern the status of the juvenile." *Id.* at 303, 571 A.2d at 642. In the one family case in which we have held ancillary jurisdiction is appropriate, the ancillary issues were otherwise within the jurisdiction of the family court. Thus, in *Poston v. Poston*, 160 Vt. 1, 8, 624 A.2d 853, 857 (1993), we held that a Vermont family court might have "ancillary jurisdiction to decide issues of property division,

---

[4] Justice Morse distinguishes *McGrew* because it involves a legal separation and not a divorce. This is a distinction without a difference. The court had jurisdiction to formalize the separation and award custody of the children. This jurisdiction properly exercised by the family court did not, however, authorize it to take jurisdiction over the contractual matter that was otherwise outside the powers granted to it by statute. I can find no principled basis on which the South Carolina court could have reached a different result if the parties had been married.

maintenance, and child support even though a foreign divorce judgment may be entitled to full faith and credit."

There are two other statutory indications that the Legislature did not intend that the family court exercise ancillary jurisdiction. An examination of the statutes of other states shows that many of those having family courts have specifically provided for ancillary jurisdiction. See, e.g., La. Rev. Stat. Ann. § 13:1401(7) (West 1983) (in addition to list of proceedings, court has jurisdiction over "matters incidental to any of the foregoing proceedings"). Indeed, some states have specifically provided for family court jurisdiction over contract disputes between spouses. See, e.g., R.I. Gen. Laws § 8-10-3 (Supp. 1993) (family court is given jurisdiction over "all other contracts between persons, who at the time of execution of said contracts, were husband and wife or planned to enter into that relationship"). The Vermont Legislature provided no such authorization in establishing our family court.

Second, authorizing the family court to resolve contract disputes would create concurrent jurisdiction over such matters between the family court and the superior court. A number of states have specifically provided for concurrent jurisdiction. See, e.g., *Kagen v. Kagen,* 236 N.E.2d 475, 480, 289 N.Y.S.2d 195, 199 (1968); *Lubecki v. Ashcroft,* 557 A.2d 1208, 1213 (R.I. 1989). I agree that concurrent jurisdiction is often desirable, although it can sometimes lead to "duplication of effort, forum shopping, and delay." N.Y. Family Ct. Act § 114 practice commentary (McKinney 1983). Whatever our view of its desirability, it is clear that the Legislature did not authorize concurrent jurisdiction. At the same time it created the family court, the Legislature amended the statute describing the jurisdiction of the superior court to deny it jurisdiction over actions "made cognizable by . . . the family court." 4 V.S.A. § 113. Although this language is not irreconcilable with ancillary jurisdiction, it is a statement that concurrent jurisdiction was not intended.

I cannot agree that the Legislature in effect gave the family court jurisdiction to resolve contract disputes by the language that the family court "has all of the equitable and other powers of the superior court as to civil matters within its jurisdiction." 4 V.S.A. § 453(a). The statute plainly does not expand the juris-

diction of the family court. Indeed, as we have held with respect to the equivalent statute governing the district and probate court, 4 V.S.A. § 219, the statute "speaks only to the powers that court may properly exercise once its jurisdiction has been established." *In re Estate of Leonard*, 132 Vt. 348, 350, 318 A.2d 179, 180 (1974).

Finally, I think it important to emphasize that defendant has neither admitted to owing plaintiff the interest she seeks or consented to its payment. Indeed, one of the problems in allowing debt claims between spouses to be adjudicated in family court is that there are no pleadings that clearly define the positions of the parties. The difficulty is exacerbated in this case because defendant is unable to testify because of his physical condition. We are striking too soon to hold that the debt claimed by plaintiff is undisputed, and the only question is to determine the proper court to reflect this in its judgment.

I would hold that the family court does not have jurisdiction to adjudicate contractual disputes between spouses. The contractual claim must be brought in superior court as a normal civil action.

### III.

This holding would not, however, end the matter. Under 15 V.S.A. § 751:

> All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property, whether in the names of the husband, the wife, both parties, or a nominee, shall be immaterial, except where equitable distribution can be made without disturbing separate property.

Pursuant to the statute, we have held "that it does not matter whether the property is held separately, jointly, or as tenants by the entirety; all property owned by either of the spouses is subject to distribution." *Lynch v. Lynch*, 147 Vt. 574, 576, 522 A.2d 234, 235 (1987). Moreover, the family court has broad power to distribute marital property. *Milligan v. Milligan*, 158 Vt. 436, 439, 613 A.2d 1281, 1283 (1992). Assuming its validity, the debt owed by husband to wife is a form of property subject to distribution in the divorce proceeding. Although the family court may not adjudicate the contract claim, it may value and distrib-

ute the property in a way that obviates the need for adjudication. For example, if the debt were valued and awarded to husband as part of the property distribution, it would be extinguished. We have endorsed creative alternatives to effect an equitable distribution of property. See *Chilkott v. Chilkott,* 158 Vt. 193, 196, 607 A.2d 883, 885 (1992).

I share with Justice Morse an enthusiasm for resolving all matters connected with the marriage in one proceeding. This case is unusual, however, because these parties, although married, never "married" their financial affairs. Thus, the dispute before us is a debt collection action between a creditor and debtor who happen to be married. Even before the jurisdictional issue arose because of the creation of the family court, we explored the concerns that arise when an independent legal claim is joined with a divorce action under V.R.C.P. 80. See generally *Ward v. Ward,* 155 Vt. 242, 583 A.2d 577 (1992). *Ward* involved the joinder of tort claims arising out of interspousal violence with the divorce action. We expressed concern that such joinder would complicate the litigation and "delay resolution of the divorce proceeding," and would make it difficult "to protect the right to trial by jury while providing expeditious relief in the divorce action." *Id.* at 247, 583 A.2d at 581. We reiterated our law that the right to trial by jury on a legal claim is not lost because it is joined with claims on which there is no such right. *Id.* at 246, 583 A.2d at 580. We concluded that it was inappropriate to allow the tort claims to be litigated in the divorce action. *Id.* at 248, 583 A.2d at 581.

Putting aside the jury trial question, which has not been raised by either party, I agree that many of the circumstances suggest resolving the claimed debt through a property distribution offset, assuming the court finds the debt is valid. There are no children of this marriage. The only issues between the parties are financial, although it is important to recognize that the parties are older and there is a need to resolve the divorce while they are alive. See *Estate of Ladd v. Estate of Ladd,* 161 Vt. 270, 640 A.2d 29 (1994) (divorce abates on death of either spouse).

There is, however, one overriding factor that precludes this approach. The postnuptial agreement is clear that the parties intended to keep their properties separate despite their marriage. The only way the court could reach a result similar to the

award of outstanding interest on the debt requested by plaintiff would be to award the debt to defendant, offset by an award to plaintiff of defendant's "separate" property of equivalent value. This transfer of property interests is exactly what the postnuptial agreement prohibits.

I cannot agree with the position that the agreement was intended to cover only dower and curtesy and therefore would be no bar to a property award here. The parties may have had dower and curtesy interests in mind but drafted a broader document to encompass other forms of property distribution that would be similar in effect to dower and curtesy. See *Hill v. City of Burlington*, 157 Vt. 241, 247, 597 A.2d 792, 795 (1991) (contracts must be enforced "as written"). If there were no debt claim, a property award that transferred property from one spouse to the other would have been a clear violation of the agreement. The result in family court can be no different because of the debt claim. That claim must be resolved by separate action in superior court.

Although I would affirm the judgment of the family court granting the parties their divorce, I would hold that plaintiff's debt claim is not extinguished, and plaintiff is free to pursue it by separate action in superior court.

**Morse, J.,** concurring and dissenting. The opinion authored by Justice Dooley and joined by Justice Gibson would hold that the family court does not have jurisdiction to award relief on the promissory note husband made out to wife and would require wife to institute a debt collection action in superior court. My opinion, which is joined by Justice Johnson, would remand the matter to the family court for reconsideration of the property distribution in light of our reversal of the family court's ruling construing the postnuptial agreement.

The Court's two-two tie appears to have left the parties with an unenviable choice between courthouse doors, with no assurance that the door they choose will be deemed the right one should the matter come before us again. But in fact we do not ask the parties to guess which court is the lady and which is the tiger. The safe choice, if a dispute develops, is the superior court. In my view, the superior court would have concurrent jurisdiction to decide the enforceability of the promissory note.

I write separately because, in my opinion, the family court has the authority to determine the enforceability of contracts between divorcing parties as part of the property settlement. I believe that requiring parties in a divorce action to adjudicate such contracts in another forum would impose a nonsensical burden upon them and would contradict the underlying purpose of the legislation creating the family court—to bring into a single court all proceedings involving the family unit. See 4 V.S.A. § 454. Requiring the parties to file suits in two forums to adjudicate this rather straightforward divorce would be an especially odd result in this case because neither party suggested it. The only issue the parties disputed in the family court was whether the postnuptial agreement released husband from paying interest. Husband has never challenged the existence of the debt or its enforceability apart from the postnuptial agreement. For that reason alone, the family court should distribute the debt as it would any other marital property, including marital debts owed to third parties.

Even if husband disputed owing his wife interest on the note, I believe the family court should have ancillary jurisdiction to resolve the dispute between the parties as incidental to its primary duty of distributing the marital property. Ancillary jurisdiction is defined as the power of the court "to adjudicate and determine matters incidental to the exercise of its primary jurisdiction of an action." See Black's Law Dictionary 79 (5th ed. 1979). The adjudication of divorces, of course, is one of the civil matters within the family court's jurisdiction, 4 V.S.A. § 454(4), and the distribution of the parties' property, including any debts, is a primary part of the court's jurisdictional duty in divorce proceedings. 15 V.S.A. § 751(a) (family court must "settle the rights of the parties to their property" by "equitably" dividing it; all property owned by either or both parties, "however and whenever acquired, shall be subject to the jurisdiction of the court"). For the family court to fulfill its statutory duty to distribute marital property, it would necessarily have to adjudicate any contracts between the parties that directly affect the property. See *Bereman v. Bereman*, 645 P.2d 1155, 1161 (Wyo. 1982) (cancellation of debt owed by one spouse to another in property-settlement order was not abuse of discretion). Determining the existence and value of marital property, including

any debts owed between the parties, is an indispensable prerequisite to applying the criteria under 15 V.S.A. § 751(b).

Not only is the family court's jurisdiction broad regarding divorce matters, but it also "has all of the equitable *and other powers* of the superior court as to civil matters within its jurisdiction, *except as specifically limited by statute*." 4 V.S.A. § 453(a) (emphasis added).[1] No statute limits the family court's power to construe contracts in furtherance of its authority to distribute property. In short, the statutory provisions, and the case law interpreting them, give the family court the authority in a divorce action, as the superior court once had, to distribute marital debts owed by the parties to third persons or to each other. Further, when the contract is between the divorcing parties, the court has ancillary jurisdiction to construe the terms and enforceability of the contract in furtherance of its duty to distribute marital property.

Handling such contracts within divorce proceedings is the most practical way to proceed in the course of dividing the property of divorcing parties. It would not make sense for us to prevent the family court, which was specifically created to adjudicate divorces, from construing agreements concerning marital property and from distributing that property based on those agreements and the relevant statutory criteria. The two-forum shopping suggested by my colleagues would hamper judicial economy, greatly increase the expense and delay of divorce litigation, and provide one warring party more ammunition to harass the other. And all of this for no good reason. A family court judge is just as competent as a superior court judge to adjudicate such matters. *Magee v. Magee,* 519 A.2d 994, 996 (Pa. Super. Ct. 1987) ("Obviously, the Family Division judge is equally competent to decide the action in assumpsit . . . relating to support, medical expenses and education, founded on contract law under a separation agreement, as he is to determine the same matters under statutory and common law, pursuant to a complaint in support.").

My colleagues agree that some contracts are subject to the jurisdiction of the family court. See *Lewis v. Lewis,* 149 Vt. 19,

---

[1] The family court has the same powers over its proceedings as that vested in the superior court by statute or common law. 4 V.S.A. § 453(b).

22, 538 A.2d 170, 172 (1987) (the trial court must give great weight to any agreements between the parties dividing property); *Bassler v. Bassler*, 156 Vt. 353, 361, 593 A.2d 82, 87 (1991) (antenuptial agreement is enforceable if it is fair and spouses entered into it voluntarily and with full knowledge of each other's financial status). Indeed, in this case we presume that the family court was authorized to construe the postnuptial agreement. I fail to grasp why the family court would be empowered to construe the postnuptial agreement but would not be permitted to determine the enforceability of the parties' promissory note. Like most postnuptial or antenuptial agreements, the promissory note affects the equitable distribution of the parties' marital property and therefore should be handled by the family court.

At one point, my colleagues suggest that the family court could bypass the jurisdictional barrier by awarding the interest debt to husband, but later reject this alternative because the postnuptial agreement prevents that result. They view this case as "unusual," because it is "a debt collection action between a creditor and debtor who happen to be married." In their words, these married people "never 'married' their financial affairs." This view, I suspect, may surprise some. Most marriages that end in divorce could be characterized in analogous ways. At any rate, such a view begs the question of what issues are properly decided in family court and whether, and to what degree, the parties' contractual agreement should be enforced.

My colleagues rely heavily on two Vermont cases in support of their view of the family court's limited jurisdiction. In one of those cases, *Ward v. Ward*, 155 Vt. 242, 248, 583 A.2d 577, 581 (1990), we held that the divorcing parties' tort claims and counterclaims sounding in assault and battery and emotional distress could not be joined into a divorce action. *Ward* is controlling here. Our holding in that case was based on the fact that tort claims are distinct from the issues involved in a divorce proceeding in the sense that joining them would implicate such procedures as discovery and trial by jury, which are not available in a divorce proceeding and would delay resolution of the divorce. *Id.* at 246–47, 583 A.2d at 580–81. In *Ward*, we precluded the family court from considering the parties' tortious conduct as a joined tort claim, but not from considering such conduct in arriving at an equitable distribution of property. We

have never ruled that issues of spousal cruelty, for example, could not be considered in dividing marital property. *Id.* at 244, 583 A.2d at 579; see 15 V.S.A. § 751(b)(12) (court may consider respective merits of parties). Yet, taken at face value, my colleagues' narrow view of the family court's jurisdiction appears to create some doubt even in this area.

Although our position in *Ward* is not universally accepted, see *Simmons v. Simmons*, 773 P.2d 602, 604 (Colo. Ct. App. 1988) (there is "no clear majority position" among other jurisdictions on whether actionable torts between married parties can or must be litigated in divorce proceedings), I joined in the *Ward* decision and still agree with its holding. But the situation here is the reverse of *Ward*. Neither party sought to *join* a contract action with the divorce. Nor did the parties attempt to invoke the jurisdiction of the family court beyond that permitted by law. In order to divide the parties' property, it was just as necessary for the court to decide whether husband owed wife interest under the promissory note as it would have been to decide whether he had abused her, if that had been an issue.

Neither does the other Vermont case relied on by my colleagues, *In re M.C.P.*, 153 Vt. 275, 571 A.2d 627 (1989), undermine the family court's jurisdiction here. In that case, after noting that the controlling statute provided jurisdiction over proceedings concerning the child in need, we held that the juvenile court had "no jurisdiction to consider side issues that do not concern the status of the juvenile." *Id.* at 303, 571 A.2d at 642. As we noted, strict adherence to the statute was necessary "to ensure a single-minded focus on the juvenile" and to prevent the resources of the juvenile court from being "diluted to resolve a separate dispute that had no impact on the juvenile." *Id.* Here, to the contrary, the distribution of the parties' property, including the debt husband owed wife, is at the very heart of the divorce and the family court's jurisdiction. Thus, concerns over avoiding potential delay and unnecessary collateral litigation, which weighed against broader jurisdiction in *Ward* and *M.C.P.*, weigh distinctly in favor of family court jurisdiction.

My colleagues cite several other cases from other family-court jurisdictions for the proposition that "general civil claims, even between spouses, cannot be litigated in the family court." These cases do not stand for such a broad proposition. Some hold merely that family courts have no jurisdiction over post-

divorce contract actions between former spouses concerning agreements that were never incorporated into divorce judgments. For example, *Sims v. Sims*, 348 S.E.2d 835 (S.C. 1986), arose from the husband's action to set aside a conveyance brought two years after the divorce. In a per curiam opinion, the South Carolina Supreme Court held that the former husband had to seek enforcement of the alleged agreement in the common pleas court because the agreement had never been incorporated into the divorce decree, and no statute gave the husband "an independent right to institute a separate action in the family court to determine his interest in the property since the requested relief is *not incidental* to the divorce decree." *Id.* at 836 (emphasis added).

Later cases from South Carolina make it clear that *Sims* stands merely for the proposition that South Carolina statutes do "not give a *former* spouse the right to institute a *separate* action in family court where the relief requested is *not incidental* to the divorce decree." *Eichor v. Eichor*, 351 S.E.2d 353, 354 (S.C. Ct. App. 1986) (citing *Sims*) (emphasis added); see *Brown v. Brown*, 368 S.E.2d 475, 477 (S.C. Ct. App. 1988) (citing *Sims*, court held that "family court lacks subject matter jurisdiction to settle a dispute between spouses involving their respective interests in property, *unless the determination is incident* to an action requesting an alteration of their marital status") (emphasis added); *Roberts v. Roberts*, 361 S.E.2d 341, 342 (S.C. Ct. App. 1987) (because family court's decree approving settlement agreement is "now final," subject matter jurisdiction regarding agreement, including interpretation of its terms, rests with circuit rather than family court).[2]

Cases from other family-court jurisdictions are similarly limited. For example, *Sanders v. Sanders*, 570 A.2d 1189 (Del.

---

[2] In June 1986, before *Sims* was decided, the following South Carolina statutory provision became effective: "The family courts of this State have subject matter jurisdiction over all contracts relating to property which is involved in a proceeding under this article and over the construction and enforcement of those contracts." S.C. Code Ann. § 20-7-479 (Law. Co-op. Supp. 1993). Apparently, this provision was part of a general clarification of family court law. Because none of the cases cited above mention the provision, the holdings therein do not appear to be based on it. In any event, neither the statutory law nor the case law of South Carolina precludes the family court from construing marital agreements within the context of a divorce proceeding, as the dissent suggests.

1990), involved a post-divorce action in which the wife sought to rescind a property division agreement that had not been merged in the divorce decree. The court held that the family court did not have subject matter jurisdiction "to entertain petitions to rescind contractual agreements *outside* the scope of divorce or annulment proceedings." *Id.* at 1191 (emphasis added). The court, however, specifically stated that the wife could still bring her petition for ancillary relief in the family court by filing a Rule 60(b) motion to reopen the divorce. *Id.* at 1192.

A single brief opinion from South Carolina is cited in support of my colleagues' conclusion that "not all cases from other states involve independent proceedings in which the family court did not have proper claims before it." That case, *McGrew v. McGrew*, 257 S.E.2d 743 (S.C. 1979), does not undermine my position because it did not involve a divorce proceeding, and thus did not address whether the family court had authority to construe the parties' contract in furtherance of its authority to divide marital property. In that case, the parties were separated but not divorced. The wife instituted an action to collect child support arrearages based on a separation agreement that had never been incorporated into a divorce order or approved by the court. The court held that the family court was without jurisdiction to determine the arrearages due under the separation agreement because "such liability was based solely upon the contract between the parties." *Id.* at 744. Here, in contrast, we have a divorce proceeding in which the family court has the power, indeed the duty, to distribute the parties' property.

I find it ironic that my colleagues' view would preclude the family court from allocating contractual debts between divorcing parties, when we have accepted the practice of the divorce court determining, and allocating between the parties, the debts one or both of them allegedly owe to third parties. See *Sullivan v. Sullivan*, 137 Vt. 544, 546, 409 A.2d 561, 562 (1979) (court ordered husband to relieve wife of liability on note signed by both parties during marriage); cf. *Warren v. Warren*, 800 S.W.2d 730, 731 (Ark. Ct. App. 1990) (despite lack of express statutory authority, chancellor has power to allocate marital debts). If my colleagues' intent is to restrict this practice as well, the family court jurisdiction is, indeed, a dwindling resource.

This case is even less problematic than cases involving third-party debts because the parties to the contract are before the family court as the divorcing parties; thus, the court has even more reason to determine the merits of the contract and to distribute the debt. See *Lubecki v. Ashcroft*, 557 A.2d 1208, 1213 (R.I. 1989) (both superior court and family court may have concurrent jurisdiction to resolve contractual disputes between married parties, "and the principles of . . . practicality should generally be applied in determining which court is better able to furnish complete relief")[3]; cf. *Brooks v. Minn*, 836 P.2d 1081, 1085 (Haw. 1992) (decree-judgment creditor can enforce collection of family court-ordered property settlement payments either through circuit or family court). As the Rhode Island Supreme Court so aptly stated: "To resurrect the eighteenth-century Chinese wall between different tribunals (then, law and equity) would serve neither the principles of judicial economy nor the right of the parties litigant to a speedy and just remedy in resolution of their disputes." *Lubecki*, 557 A.2d at 1214.

In sum, I agree that the family court's interpretation of the parties' postnuptial agreement is erroneous. I would reverse the family court order and remand the matter for reconsideration of whether the agreement is enforceable under the *Bassler* test in light of the reversal, and for distribution of the debt. The debt in question is fairly significant and conceivably could affect the family court's determination regarding the fairness of the postnuptial agreement, given the circumstances of the parties. Assuming that on remand the family court found the agreement to be enforceable notwithstanding the existence of the debt, I would permit the court to distribute the debt. Distribution of the debt would not violate the postnuptial agreement. That agreement merely expresses the parties' intent to release each other from dower and curtesy.

---

[3] My colleagues cite *Lubecki v. Ashcroft*, 557 A.2d 1208, 1213 (R.I. 1989), and *Kagen v. Kagen*, 236 N.E.2d 475, 480, 289 N.Y.S.2d 195, 199 (1968), for the proposition that "[a] number of states have specifically provided for concurrent jurisdiction." In neither case, however, was concurrent jurisdiction explicitly provided by statute. Rather, the courts interpreted the statutes to provide concurrent jurisdiction. Similarly, I believe that our statutes provide concurrent jurisdiction here.