NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 57

No. 2015-070

| | |
|---|---|
| Walter Lourie | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Lamoille Unit, |
| | Family Division |
| | |
| Sharlee Lourie | October Term, 2015 |

Dennis R. Pearson, J.

William B. Miller, Jr. and Erin Miller Heins of Langrock Sperry & Wool, LLP, Middlebury, for
 Plaintiff-Appellant.

Brice C. Simon of Breton & Simon, PLC, Stowe, for Defendant-Appellee.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **EATON, J.** Husband appeals from a final divorce order, arguing that the family division of the superior court: (1) failed to consider the relevant statutory factors before incorporating the parties' pretrial separation agreement into the divorce order; (2) erroneously awarded wife an arrears judgment based on their agreement even though the agreement had not been submitted to the court or incorporated into a temporary order prior to the final divorce hearing; and (3) abused its discretion by awarding wife the bulk of the marital estate in addition to a substantial maintenance award. We reverse and remand.

¶ 2. The relevant facts are not in dispute. The parties married in Alaska in 1992 and moved to Vermont in 1996. They have two children, one of whom had reached the age of

majority before the final divorce hearing was held.  The younger child, born in March 1997, was a couple of months shy of her eighteenth birthday at the time of the hearing.  During most of the marriage, the parties ran what evolved into a flooring business.

¶ 3.    The parties separated in February 2012, after which husband lived and worked first in New York and then later in Washington, D.C.  Husband filed for divorce in March 2013.  Two months later, in May 2013, the parties executed a written agreement that dealt with spousal and child support, as well as business debts.  Husband agreed to pay wife $4000 in monthly support for a five-year period after husband had paid off all personal and business debt.[1]  The agreement stated that the parties "will be giving a copy of this Divorce agreement to use and make final divorce agreement for divorce court hearing."  For six months following the parties' execution of the agreement, husband paid wife $4000 per month, but then reduced his payments to $943 per month, which he continued to pay through the final divorce hearing.  Neither party submitted the agreement to the family court until the final divorce hearing, which was held in November 2014.  Thus, the agreement was never incorporated into a temporary support order.

¶ 4.    By the time of the final hearing, the parties had agreed on parental rights and responsibilities.  The primary issue in dispute at the contested hearing was how much maintenance husband would be required to pay wife.  Wife asked the family court to enforce the parties' agreement in anticipation of divorce—in particular the provision requiring husband to pay wife $4000 per month in support.  At the outset of the hearing, however, her attorney conceded that "even if the Court finds this was an agreement, the Court still has to make an equitable division."  Accordingly, the attorney stated that "although we'd like the Court to

---

[1]  The family court found that although there was insufficient evidence to determine exactly what debt the parties were referring to or whether that debt had actually been paid off, husband in fact began paying wife $4000 in support immediately after execution of the agreement, and wife accepted those payments.  Accordingly, the court concluded "that the parties' own understanding, and intent[,] was that the 5-year payment period began as of May 2013."  Neither party has challenged this conclusion on appeal.

2

enforce the agreement, we recognize the need for the Court to hear evidence to make an equitable distribution." For his part, husband did not object to paying maintenance, but stated that he could not afford to pay the amount wife was seeking—the $4000 per month provided for in the parties' agreement.

¶ 5.    Following the hearing, the family court: (1) granted the parties a divorce; (2) awarded the marital homestead, which had zero or negative equity, to wife; (3) awarded each party personal property in their possession; (4) required husband to pay off jointly held credit cards; (5) ordered husband to execute any documents necessary to transfer shares in their business to wife; (6) ordered husband to transfer to wife two life insurance policies with a then-current cash value of $23,539; and (7) awarded wife maintenance in the amount of $4000 per month for a five-year period—from May 2013 until April 2018—per the parties' agreement. The court explicitly stated that it was incorporating the parties' separation agreement into the final order. The court also awarded wife, based on the agreement, an arrears judgment in the amount of $45,855.

¶ 6.    Husband appeals from the final divorce order, arguing that the family court abused its discretion by: (1) incorporating the parties' separation agreement into the final divorce order without considering the relevant statutory factors; (2) awarding wife an arrears judgment based on the agreement even though wife had not submitted the agreement to the court or sought its incorporation into a court order until the final divorce hearing; and (3) awarding wife the bulk of the marital estate in addition to the substantial maintenance award.

¶ 7.    The principal issue briefed by the parties is whether the family court erred by incorporating the parties' separation agreement into the final divorce order without examining the relevant statutory factors. Husband contends that the court abused its discretion by adopting the agreement without considering its fairness in light of the statutory factors contained in 15 V.S.A. § 752 for awarding maintenance. According to husband, the family court's express

3

decision not to conduct a statutory analysis resulted in the court failing to consider his inability to pay the maintenance obligation contained in the separation agreement.

¶ 8.    In making this argument, husband relies primarily on our decision in Pouech v. Pouech, 2006 VT 40, 180 Vt. 1, 904 A.2d 70.  In that case, the wife appealed the family court's refusal to allow her to amend her divorce complaint to seek maintenance.  Along with her complaint, the wife had filed a separation agreement that the parties had negotiated in anticipation of divorce.  The agreement was silent with respect to maintenance.  The family court refused to allow wife to seek maintenance over and above the terms of the agreement, and instead incorporated the agreement into the final order, without any maintenance award.  Among other things, the wife argued on appeal to this Court that the family court was obligated to determine whether the parties' agreement was fair and equitable before incorporating it into its final divorce order.

¶ 9.    We concluded that under the circumstances of that case—where wife challenged the agreement before the family court held a final divorce hearing or incorporated it into the final divorce order—the court erred by refusing to consider the wife's maintenance request based solely on her failure to establish grounds sufficient to overturn a contract.  Id. ¶ 19.  We stated that "the court should have given the parties an opportunity to present evidence on the fairness of their stipulation," after which "the court had the discretion to reject the stipulation on grounds that it was inequitable in light of the relevant statutory factors."  Id.  We explained that when one or both parties object to a separation agreement before the agreement has been incorporated into a final divorce order, "policy considerations that favor deference to the parties' 'voluntary' agreement are less forceful."  Id. ¶ 21.  We further explained that while "[p]ublic policy favors parties settling their own disputes in a divorce, . . . the family court has a statutorily authorized role to play in divorce proceedings to assure a fair and equitable dissolution of the state-sanctioned institution of marriage."  Id. ¶ 24.

4

¶ 10. Accordingly, we held that when parties have executed a separation agreement regarding maintenance or the division of marital property, "but one or both of the parties challenge the [agreement] before the family court has held a final hearing or incorporated the [agreement] into a final divorce order, the court may reject the stipulation even if the challenging party fails to demonstrate grounds sufficient to overturn a contract." Id. ¶ 22. In so holding, we emphasized that "the question is one of fairness and equity viewed from the perspective of the standards and factors set forth in our divorce statutes," id. ¶ 23, and that "it is imperative that the court provide adequate findings as to why it has chosen to reject or accept the stipulation," id. ¶ 22.

¶ 11. Here, the family court found that "subsequent events and [husband's] current financial circumstances have made it difficult, if not impossible, for [husband] to currently comply with that $4000 per month obligation, but the agreement appears to have been mutually arrived at and was fair, reasonable and appropriate at the time" it was executed. The court then concluded that the agreement "is valid and enforceable, and at the time was entirely reasonable and appropriate with regard to the agreed-on payment of $4000 a month." The court stated that it would "not perform a separate or independent analysis under 15 V.S.A. § 752, and [would] not specifically consider the respective factors," but noted that a review of those factors "would certainly point to the same result, i.e. [wife] should be awarded at least some period of at least temporary, rehabilitative spousal maintenance, in a substantial amount given her lack of regular employability and lack of dependable current income." According to the court, the "real dispute" was over husband's current apparent inability to pay the stipulated amount, which it suggested was an enforcement issue.

¶ 12. We agree with husband that the family court failed to exercise its discretion to determine whether the parties' agreement was fair and equitable and thus should be incorporated

into the final divorce order.[2] To be sure, the court determined that the support provision in the agreement was fair and equitable "at the time" the parties' executed the agreement. Nevertheless, the court was obligated to consider whether the agreement was fair and equitable pursuant to the relevant statutory factors at the time of the final hearing, such that it could be incorporated into the final divorce order. Moreover, we are unmoved by the court's statement that those statutory factors would point to the same result. First, the court explicitly stated that it was not doing an independent analysis under the statute or considering the statutory factors. Second, the court defined "the same result" as wife receiving a substantial amount of at least temporary rehabilitative maintenance. That does not necessarily translate to $4000 per month. Third, as noted, the court stated at one point that husband's financial circumstances made it difficult if not impossible for him to comply with the agreement.

¶ 13.   Accordingly, we remand the matter to the family court to make a determination based on the relevant statutory factors as to whether the parties' agreement should be incorporated into the final divorce order. We recognize that husband's financial circumstances were clouded by his various business enterprises and the lack of hard evidence concerning his income from those businesses due in part to his commingling personal and business expenses. Nonetheless, in determining an appropriate maintenance award going forward from the date of the final divorce hearing—and, concomitantly, whether to incorporate the parties' agreement into the final divorce order—the family court must consider on remand whether the agreement was fair and equitable in light of the relevant statutory factors and the parties' circumstances at the time of that hearing.

---

[2]   As noted, wife's attorney acknowledged at the final divorce hearing that before adopting the parties' separation agreement the family court was obligated to consider whether the agreement was fair and equitable with respect to establishing a court-ordered maintenance award.

¶ 14. Another aspect of this case that must be dealt with on remand is the fact that the parties' agreement identified child support as part of the total monthly amount husband was to pay wife. The parties' youngest child was two months shy of her eighteenth birthday at the time of the court's final order, and had not yet graduated from secondary school. "Parents do not control the initial child-support order in divorce cases" and they cannot waive their children's right to child support by their action or inaction. Bergman v. Marker, 2007 VT 139, ¶¶ 13, 18, 183 Vt. 68, 944 A.2d 265. Child support is money for the benefit of the parties' children and cannot be bargained away subject only to the parents' interests. See White v. White, 141 Vt. 499, 503, 450 A.2d 1108, 1110 (1982) (stating that parents cannot "withdraw the interests of [their] children, who are not parties to [the] contract, from the continuing jurisdiction of the court"). Thus, "the family court was required to include a child-support order as part of the adjudication of the divorce proceeding." Bergman, ¶ 18. Accordingly, on remand, the court must separate any spousal maintenance award (prospective from the final order) from husband's prospective child support obligation. Any child support order may be made retroactive to March 21, 2013, the date of the divorce petition. Id. ¶¶ 21, 23 (holding "that an order initially establishing child support in a divorce case may be retroactive to the date that the divorce petition is filed" and emphasizing that "early retroactivity date merely establishes the outer limit on the discretion of the court").

¶ 15. Husband also challenges the family court's lump-sum arrears award of $45,855. He argues that there was no equitable or statutory basis for obtaining a judgment for arrears arising from an agreement that had not been incorporated into a temporary order under 15 V.S.A. § 594a, which provides that divorcing parties "may apply for temporary relief" following the filing of a complaint for divorce. Wife responds that, as the family court found, the parties intended the agreement to be binding and enforceable upon execution, and that the agreement itself provided that the parties would submit a copy to the court to make a "final divorce

agreement" at a "final divorce hearing." Wife states that the very purpose of the agreement was to avoid litigating temporary maintenance, and that allowing husband to avoid temporary maintenance on this basis would frustrate the policy of encouraging parties to reach agreements regarding maintenance during the pendency of a divorce.

¶ 16. We conclude that, although Pouech did not concern arrears, the principles expressed therein apply with equal force to obligations purportedly incurred under a separation agreement before the agreement was submitted to the family court for consideration. As noted, we concluded in Pouech that "policy considerations that favor deference to the parties' 'voluntary' agreement [in anticipation of divorce] are less forceful" before the agreement has been presented to the court to determine if it is fair and equitable under the circumstances of the marriage. 2006 VT 40, ¶ 21. This is so because when couples enter into an agreement in anticipation of divorce during the throes of what is often an emotional or volatile breakup, "the family court has a statutorily authorized role to play in divorce proceedings to assure a fair and equitable dissolution of the state-sanctioned institution of marriage." Id. ¶ 24 (recognizing "the simple truth that an agreement in anticipation of divorce is not the same as an ordinary contract"). Nothing in our decision in Pouech suggests a lesser scrutiny of agreements in anticipation of divorce with respect to obligations accrued under such an agreement before the court has had an opportunity to consider the agreement in the context of divorce proceedings. In short, the family court may not enforce an agreement made in anticipation of divorce— prospectively or retroactively—without first making an independent assessment of the fairness of the agreement under the relevant statutory criteria. To hold otherwise could lead to a result where a party was found to be in arrears on a past-due obligation under an agreement between the parties while at the same time the court refused to incorporate that obligation into a final order because it lacked fairness.

¶ 17. Hence, in a situation such as this,[3] where the parties entered into an agreement in anticipation of divorce, the family court is not precluded from considering obligations that accrued under the agreement before it was submitted to the court, and then adjusting its maintenance and property awards accordingly. The court must consider whether there was an agreement that met the requirements of a contract and whether that agreement was fair and equitable in light of the statutory criteria from the time it was made until the time of the final hearing. If those criteria are satisfied, the parties' agreement and its prospective obligations essentially created a debt from one spouse to the other, and, if unpaid, the court may make adjustments to the maintenance and property awards based on the agreement. See Allen v. Allen, 161 Vt. 526, 534, 641 A.2d 1332, 1337 (1994) (Dooley, J., concurring and dissenting) ("Assuming its validity, the debt owed by husband to wife is a form of property subject to distribution in the divorce proceeding."); id. at 537, 641 A.2d at 1138 (Morse, J., concurring and dissenting) ("[T]he family court has the authority to determine the enforceability of contracts between divorcing parties as part of the property settlement.").

¶ 18. Where the court independently concludes that an agreement was fair and equitable with respect to the period in question, and that one party's failure to honor the agreement undermined the financial position of the other party, the court can consider those facts in determining prospective spousal maintenance, 15 V.S.A. § 752(b) (allowing court to consider nonexclusive list of relevant factors, including financial resources of both parties), or in making

---

[3] The instant agreement provided for maintenance from the time of the agreement for a fixed period, which, as explained above, requires the family court to determine not only whether the agreement was fair and equitable with respect to any amounts owed at the time of the final hearing, but also to determine the fairness and equitability of the agreement with respect to the court's maintenance order going forward, as required by Pouech. Parties, of course, could also make an agreement that provided for maintenance only up until the final divorce hearing, which would require the court to consider the fairness of the agreement when it was made and deal with any unpaid debt accordingly in its maintenance award or property division. Or parties could agree only to maintenance going forward from the final hearing, which would require the court to determine whether the agreement was fair and equitable and thus could be incorporated into the court's final divorce order.

an equitable division of the parties' marital property. In dividing marital property and debt, the family court is empowered to consider several nonexclusive factors relating to, among other things, the financial circumstances and the respective merits of the parties. Id. § 751(b). Hence, a court is also free to consider the financial detriment to one party and advantage to the other resulting from one party's failure to honor an agreement that the court concludes was reasonable and fair throughout the temporary period.

¶ 19. The family court in this case found that the parties entered into an enforceable agreement that was "entirely reasonable" at the time it was executed, but also found that husband had no current ability to pay wife $4000 per month as required under the agreement. Hence, the arrears judgment must be vacated and the matter remanded for the court to determine the point at which the agreement became unfair or inequitable, calculate the debt owed to wife based on that determination, and factor that sum into its maintenance and/or property awards. Moreover, per our discussion above, in calculating arrears, the court must determine what part of husband's monthly obligation through this period, if any, should be designated as child support, given that the parties' agreement was executed after husband filed a divorce petition.

¶ 20. Husband also seeks review of the court's property award. As the trial court pointed out, there was very little property to divide, and husband challenged only that aspect of the parties' agreement establishing the monthly support award. Neither has husband appealed incorporation of the parties' agreement with respect to the property distribution. Further, as the trial court found, there was either no or negative equity in the marital home, which was awarded to wife, and husband agreed to waive any interest in the home. The court also noted that the parties had already divided items of personal property prior to the final divorce hearing. The only property of any real value appears to be the $23,500 cash value of two life insurance policies. We reverse the property award because of our determination that the court has the

option of adjusting the award based on its arrears determination, but we recognize that the court is limited in how it can amend the award, given the dearth of property owned by the parties.

¶ 21. Because we are reversing and remanding both the maintenance award and the property award for reconsideration in light of this opinion, we need not consider husband's brief argument that the property award was unfair when added to the maintenance award.[4] The court need not hold a new evidentiary hearing but may do so if it determines, given this Court's opinion, that the parties should have an opportunity to present additional evidence on their complicated financial circumstances leading up to the final divorce hearing.

The superior court's decree of divorce is affirmed; however, its maintenance award, property division, and judgment of arrears are reversed and the matter is remanded for further consideration in light of this opinion.

FOR THE COURT:

_____
Associate Justice

---

[4] Husband argues that the property award must be reversed in any event because the maintenance award must be reversed. See Semprebon v. Semprebon, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991) ("Because we are remanding for the court to consider a maintenance award, we will also reopen the property award because of the interrelationship of these two parts of the financial order."). Because we are reversing both the maintenance and property awards, we need not address this argument. We point out, however, that the reversal of one award is not necessarily automatic when the other is reversed. See DeGrace v. DeGrace, 147 Vt. 466, 470, 520 A.2d 987, 990 (1986) (stating that under circumstances where it "cannot be determined whether vacating the maintenance award will affect the property settlement" because nothing in the record "indicate[s] how the maintenance award bears upon the property division," the property division also must be vacated). In circumstances where reversal of one award could not possibly have any impact on the other award—for example, where the reviewing court upholds the award of all of the marital property to the recipient spouse but concludes that the maintenance award to that spouse was insufficient—reversal of the property award may not necessarily follow.